DEFENDANT'S EXHIBIT B

STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
COUNTY OF BUNCOMBE      SUPERIOR COURT DIVISION
FILE NO.: 20-CVS-CC349

FILED 2020 JAN 24 P 1:10 BUNCOMBE CO., C.S.C. BY_____

GEOFFREY DANIEL GLOYNE,

    Plaintiff,

v.      **COMPLAINT**

PROGRESSIVE SOUTHEASTERN
INSURANCE COMPANY,

    Defendant.

---

NOW COMES the Plaintiff, complaining of the Defendant, and alleges and says as follows:

1.

Plaintiff Geoffrey Daniel Gloyne is a citizen and resident of Swain County, North Carolina.

2.

Upon information and belief, the Defendant Progressive Southeastern Insurance Company ("Progressive") is a corporation incorporated in the State of Indiana.

3.

Upon information and belief, at all material times relevant to this action, Progressive was licensed to conduct business in North Carolina and actively conducted the business of issuing automobile insurance policies and adjusting insurance claims throughout the State of North Carolina, including Buncombe County.

4.

This action arises from the contractual agreement between the Plaintiff and Defendant, namely, a North Carolina underinsured motorist coverage policy.

5.

This court has subject matter jurisdiction over this action, and personal jurisdiction over the Defendant.

6.

Defendant issued an automobile insurance policy to Plaintiff, policy number 66878643-8 (the "Policy").

7.

The policy constitutes an enforceable contract under North Carolina law, and Plaintiff paid the full premium on the Policy and satisfied all other conditions to maintain the Policy in full force and effect at all relevant times.

8.

At all relevant times, including 6 May 2017, the Policy was effective and in force and the Policy provided Underinsured Motorist Insurance ("UIM") coverage to Plaintiff in the amount of $100,000.

9.

At all relevant times, Plaintiff was an insured person under the terms of the Policy.

10.

Under the terms of the UIM insurance coverage provided to Plaintiff, as a specifically named insured in the Policy and under the obligations placed on Defendant by North Carolina law (including but not limited to North Carolina General Statutes § 20-279.21), Defendant is required to pay to Plaintiff compensatory damages which Plaintiff is legally entitled to recover from the operator of an underinsured motor vehicle because of bodily injury sustained by Plaintiff and caused by an accident where the operator's liability for such damages arises out of the use of the underinsured motor vehicle.

11.

That on or about the 6th day of May, 2017, at approximately 3:52 a.m., Plaintiff Geoffrey Daniel Gloyne was operating a motor vehicle with Benita Jefferson Gloyne as a passenger that was traveling west on US 23.

12.

That on the same day and time as referenced above, and immediately before the violent collision described below, Donald Lee Cooley Jr. (the "underinsured driver") was operating a motor vehicle (the "underinsured vehicle") that was traveling west on US 23 in front of Plaintiffs' vehicle.

13.

That Donald Lee Cooley Jr. caused his vehicle to run off the roadway to the right and struck a crash cushion then coming back into the roadway in an uncontrolled spin striking the guardrail off the right side of the roadway. His vehicle continued to spin then coming to a stop facing west directly into the lane of travel of the vehicle in which the Gloynes were travelling and caused the vehicles to collide in the Gloynes' lane of travel ("the Collison").

14.

The Collison was caused by the Cooley's gross negligent operation of his motor vehicle in that he:

   a. Operated his vehicle while he was subject to an impairing substance;
   b. Failed to maintain his vehicle under proper control under the existing circumstances;
   c. Failed to properly keep his vehicle in the correct lane of travel; and
   d. Failed to maintain a proper lookout for other vehicles on the road.

15.

The underinsured driver, Mr. Cooley, was operating an underinsured motor vehicle at the time he negligently caused the Collision, with liability insurance coverage limits of $50,000 per person injured under a liability insurance policy issued by Integon National Insurance Company ("Integon").

16.

The value of Mr. Gloyne's injuries and damages sustained in the accident exceeded the policy limits of all insurance policies applicable to the underinsured driver or applicable to the underinsured vehicle. Thus, Mr. Gloyne was injured by the negligent operation of an underinsured motor vehicle.

17.

Mr. Gloyne filed a lawsuit against Mr. Cooley on 25 August 2017 for his injuries and damages sustained in the accident.

18.

On 19 February 2019, Integon tendered to Mr. Gloyne the $50,000, which was Integon's liability policy insurance limit applicable to the underinsured motor vehicle.

19.

On 19 February 2019 the applicable limit of liability under Integon's applicable liability policy for the underinsured vehicle was "exhausted" as that word is used in the Policy and as it is used in North Carolina General Statutes Section 20-279.21.

20.

Ball Barden & Cury, P.A., by and through attorney Boone Tarlton, represented Defendant Progressive on Mr. Gloyne's underinsured motorist claim.

21.

On 25 February 2019 Mr. Gloyne's attorney emailed a letter to Defendant's attorneys which letter notified Defendant in writing that the $50,000 limit of the Integon's liability policy applicable to the underinsured vehicle was exhausted; that letter was received by Defendant's attorney, on behalf of Defendant, on 25 February 2019.

22.

The information provided to Progressive contained sufficient information for Progressive to determine that Mr. Gloyne's compensatory damages were greater than the $50,000 liability insurance limit and that the UIM Claim had a significant value.

23.

The letter to Progressive's attorneys notified Progressive that Mr. Gloyne was making a Claim for UIM benefits under his Progressive Policy.

24.

Progressive failed to advance any payment to Mr. Gloyne within 30 days of the date that Progressive received written notice of Integon's tender of payment of its $50,000 liability insurance limits; therefore, under North Carolina General Statutes § 20-279.21(b)(4), Progressive has no right of subrogation against the at-fault driver.

25.

The stated limit of UIM coverage shown on the Declarations page of the Policy is $100,000, but that limit was reduced by the $50,000 of liability insurance proceeds which Integon paid to Mr. Gloyne, so $50,000 is the effective limit of UIM coverage after taking into account Integon's payment.

26.

By 25 February 2019Progressive both knew that Progressive's liability for Mr. Gloyne's UIM Claim was reasonably clear, and they both knew that Mr. Gloyne's indisputable damages resulting from the Accident exceeded $50,000.

27.

On 25 February 2019, Mr. Gloyne made a demand for his UIM policy limits.

28.

Progressive never made a single offer to settle Mr. Gloyne's UIM claim.

29.

Progressive never made any good faith attempt to effectuate a prompt, fair, and equitable settlement of Mr. Gloyne's UIM Claim in violation of North Carolina General Statutes §58-63-15(11)f.

30.

Progressive hired Mr. Tarlton to represent Progressive in the arbitration and after the arbitration and Mr. Tarlton did represent Progressives in the arbitration and at all times after the arbitration and Mr. Tarlton continues to represent Progressive in connection with Mr. Gloyne's Claim for UIM benefits.

31.

All actions, omissions, and communications of Mr. Tarlton described below were on behalf of Progressive, with the full knowledge of Progressive, in the course and scope of Mr. Tarlton's employment by Progressive and within the actual authority granted to Mr. Tarlton by Progressive.

32.

Directly prior to the arbitration hearing on Mr. Gloyne's UIM claim, Mr. Tarlton confirmed that Progressive never made a settlement offer on Mr. Gloyne's UIM claim.

33.

Plaintiff provided uncontroverted evidence of past, present, and future medical expenses and special damages in excess of $100,000.

34.

Mr. Tarlton argued at the arbitration hearing that Mr. Gloyne was not entitled to any compensation from Progressive on his UIM insurance policy.

35.

On 27 August 2019, the arbitration panel communicated to Plaintiff and Defendant its decision that Mr. Gloyne's total compensable damages from the Accident are $200,000—double the stated coverage under Progressive's UIM policy and four times the amount already tendered as the exhausted policy limits of the liability policy issued by Integon.

### **FIRST CLAIM FOR RELIEF**
### **BREACH OF CONTRACT**

Paragraphs 1-35 are hereby realleged and incorporated herein by reference.

36.

Under the Policy, Progressive was contractually obligated to pay damages to Mr. Gloyne caused by the negligent operation of an underinsured motor vehicle up to $100,000 less a credit for the $50,000 paid by Integon (the liability insurer).

37.

Because the contract between Mr. Gloyne and Progressive was a first-party insurance contract, Progressive owed Mr. Gloyne various contractual duties, express and implied by operation of law and by usage of trade, including but not limited to duties to:

a) Promptly and properly and fairly investigate and evaluate Mr. Gloyne's claim for bodily injury;

b) Make fair and reasonable settlement offers to Mr. Gloyne based on prompt, proper, and fair evaluation;

c) Promptly pay Mr. Gloyne's claim for bodily injury;

d) Promptly pay to Mr. Gloyne any undisputed amount due, or amount that could not be reasonably disputed, under the UIM coverage;

e) To deal fairly with Mr. Gloyne;

f) Comply in all respects with North Carolina's laws on claims handling, including, but not limited to N.C. Gen. Stat. § 58-63-15; and

g) Otherwise deal in good faith with Mr. Gloyne as it relates to the payment of his claim.

38.

By 25 February 2019, Progressive should have recognized that Mr. Gloyne's UIM claim was a valid insurance claim.

39.

By 25 February 2019, no reasonable insurance company in Progressive's position would have evaluated Mr. Gloyne's claim lower than the $50,000 already paid by the liability carrier.

40.

By 25 February 2019, Progressive had received uncontroverted evidence that Mr. Gloyne's medical specials alone exceeded Progressive's UIM policy limits.

41.

At all times on and after 25 February 2019, Progressive had an express contractual duty to pay Mr. Gloyne the undisputed amount of his UIM claim and Progressive breached that duty by failing and refusing to promptly pay all amounts that could not reasonably be disputed.

42.

Progressive's acts and omissions described in this complaint constitute a breach of the express contractual duties of the Policy.

43.

Additionally, North Carolina law provides that all contracts, and especially insurance contracts such as Gloyne's Policy, contain all terms that are necessarily implied to affect the intention of the parties and which are not in conflict with the express terms; further, it is an implied term of all insurance policies that the insurer, such as Progressive in this case, is required to act in good faith and to make reasonable efforts to perform its obligations under the Policy. Progressive's acts and omissions described in this complaint constitute a breach of that implied covenant of good faith and fair dealing.

44.

As a direct, foreseeable, and proximate result of Progressive's breach of its contractual obligations as described above, Mr. Gloyne has been damaged, including but not limited to the following damages:

a) Expenses incurred by Mr. Gloyne after 25 February 2019, while pursuing his claim against Progressive, through arbitration, including attorney's fees and arbitrators' fees; and
b) Interest on the abovementioned damages at the North Carolina legal rate from and after 25 February 2019, which is the date upon which Progressive breached the contract.

45.

The abovementioned damages were within the contemplation of the parties at the time the Policy was issued.

46.

Progressive is liable to Mr. Gloyne for the above-described damages, which is in excess of Twenty-Five Thousand Dollars ($25,000).

## SECOND CLAIM FOR RELIEF
## UNFAIR AND DECEPTIVE TRADE PRACTICES

Paragraphs 1-46 are hereby realleged and incorporated herein by reference.

47.

Progressive has at all relevant times been engaged in the business of insurance in the State of North Carolina.

48.

The business of insurance is in or affecting commerce.

49.

Progressive had a duty to act in good faith when handling Mr. Gloyne's UIM claim.

50.

While handling Mr. Gloyne's UIM claim, Progressive had and still has a statutory duty to engage in fair settlement practices under N.C. Gen. Stat. § 58-63-15(11).

51.

Progressive violated their duty of good faith and their statutory duty to engage in fair settlement practices by engaging in the following acts or practices during the course of handling Mr. Gloyne's claim:

a) Progressive intentionally refused to pay Mr. Gloyne's claim and intentionally refused to make a prompt and reasonable settlement offer;

b) Progressive compelled Mr. Gloyne to initiate and participate in expensive, vexatious, emotionally painful, and time-consuming arbitration proceedings by failing to make a reasonable offer prior to initiating such proceedings; and

c) By failing to make any settlement offer, when Mr. Gloyne's past, present, and future medical specials exceed Progressive's UIM policy limits.

52.

The above-described acts and conduct of Progressive constitute unfair or deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1.1.

53.

As a direct, foreseeable and proximate result of the aforesaid unfair and deceptive acts and practices of Progressive, Mr. Gloyne has sustained actual damages, including but not limited to the following:

a) Expenses incurred by Mr. Gloyne after 25 February 2019, while pursuing his claim against Progressive, through arbitration, including attorney's fees and arbitrators' fees; and

b) The personal stress, mental anguish, inconvenience and trouble of having to wait an unreasonable time and having to prepare for and participate in arbitration proceedings in an effort to force Progressive to pay the on Progressive's UIM policy, when the uncontroverted evidence far exceeded the total policy limits on the UIM policy.

54.

Mr. Gloyne's damages for the above-described conduct of Progressive exceed Twenty-Five Thousand Dollars ($25,000).

55.

Progressive is liable to Mr. Gloyne for the above-described damages after trebling pursuant to N.C. Gen. Stat. § 75-16.

### THIRD CLAIM FOR RELIEF
### BAD FAITH REFUSAL TO PAY AN INSURANCE CLAIM

Paragraphs 1-55 are hereby realleged and incorporated herein by reference.

56.

Progressive refused to pay Mr. Gloyne's UIM claim after Progressive recognized Mr. Gloyne had a valid UIM claim.

57.

Progressive's refusal to pay the undisputed value of Mr. Gloyne's UIM claim was in bad faith in that it did not amount to an honest disagreement over the value of a valid claim, nor was it the result of an innocent mistake.

58.

Progressive had actual knowledge that Mr. Gloyne's UIM far exceeded all available coverage under the Policy, but still wrongfully, intentionally, and willfully denied all coverage under the Policy.

59.

Progressive intentionally and willfully acted in bad faith in an attempt to enhance its own financial profitability to the detriment of its insured, Mr. Gloyne—those willful acts include the following:

a) Progressive failed to act in good faith to effect a prompt, fair, and equitable settlement of Mr. Gloyne's claim after liability had become reasonably clear;

b) To the extent that Progressive evaluated Mr. Gloyne's claim, it intentionally refused to pay Mr. Gloyne's claim or even make a prompt and reasonable settlement offer;

c) Progressive failed to make **any** settlement offer to Mr. Gloyne, despite the fact that the undisputed medical specials exceeded Progressive's UIM policy limits;

d) Progressive compelled Mr. Gloyne to institute arbitration to recover amounts due under the UIM policy by refusing to make any settlement offer to Mr. Gloyne on his UIM policy; and

e) Progressive failed to provide a reasonable explanation for why it refused to offer Plaintiff coverage under his Progressive UIM policy.

60.

The acts alleged above constitute aggravated and outrageous conduct, which are intentional and willful or which result from a degree of negligence as indicates a reckless indifference to consequences, oppression, or caprice. These acts, as well as others alleged herein,

constitute refusal to pay UIM benefits in good faith and proximately caused damage to Mr. Gloyne as set forth more fully above.

61.

The acts alleged above constituting the aggravating factors giving rise to the punitive damages were participated by employees of Progressive and by other officers, directors, or managers of Progressive as shall be further determined by discovery in this action.

62.

As a direct, foreseeable and proximate result of Progressive's aforesaid bad faith refusal to pay the undisputed amount of Mr. Gloyne's UIM claim, Mr. Gloyne has sustained actual damages, including but not limited to the following:

a) Expenses incurred by Mr. Gloyne after 25 February 2019, while pursuing his claim against Progressive, through arbitration, including attorney's fees and arbitrators' fees; and

b) The personal stress, mental anguish, inconvenience and trouble of having to wait an unreasonable time and having to prepare for and participate in arbitration proceedings in an effort to force Progressive to pay the on Progressive's UIM policy, when the uncontroverted evidence far exceeded the total policy limits on the UIM policy.

63.

Mr. Gloyne's damages for the above-described conduct of Progressive exceed Twenty-Five Thousand Dollars ($25,000).

64.

The acts alleged herein were willful, malicious, wanton, or intentionally wrongful such that punitive damages should be imposed against Progressive under N.C. Gen. Stat. § 1D-1 *et seq.*

WHEREFORE, the Plaintiff respectfully prays of the Court as follows:

1. That the Plaintiff have and recover of the Defendant in an amount in excess of $25,000 pursuant to the First Claim for Relief;

2. That the Plaintiff have and recover of the Defendant in an amount in excess of $25,000 pursuant to the Second Claim for Relief;

3. That the Plaintiff have and recover of the Defendant in an amount in excess of $25,000 pursuant to the Third Claim for Relief;

4. That the Plaintiff have and recover of the Defendant in an amount in excess of $25,000 in punitive damages;

5. That the Plaintiff recover the costs of this action; and

6. For such other and further relief as the Court deems just and proper.

This the 20th day of January, 2020.

*[signature]*

Mark R. Melrose
Adam R. Melrose
Melrose Law, PLLC
Post Office Box 567
Waynesville, North Carolina 28786
(828) 452-3141 Telephone
(828) 246-6221 Facsimile
Attorneys for Plaintiff